1  **GRAIF BARRETT & MATURA, P.C.**
   Kevin C. Barrett, Bar #020104
2  1850 North Central Avenue, Suite 500
   Phoenix, Arizona 85004
3  Tel: (602) 792-5700
   Fax: (602) 792-5710
4
   Attorney email address: kbarret@gbmlawpc.com
5
   Send Court Documents To: court-info@gbmlawpc.com
6
7  Attorneys for Movants

8              **UNITED STATES BANKRUPTCY COURT**

9                    **DISTRICT OF ARIZONA**

10  In Re:                              | Chapter 13

11  KURT TOMPKINS,                      | Case No.: 2-10-bk-15311-GBN

12              Debtor,                 | Contested Matter

13  _____    | **EMERGENCY MOTION FOR**
                                        | **RELIEF FROM AUTOMATIC STAY**
14  THOMAS   R.   LOOMIS   and   LAURA
    KIMBROUGH LOOMIS, husband and wife, |
15                                      | (Eviction from the Property Located at
              Movants,                  | 7240 East Sweetwater, Scottsdale,
16                                      | Arizona and Related Litigation)
    vs.
17
    KURT TOMPKINS,
18
              Respondent.
19

20        Tom Loomis and Laura Kimbrough Loomis (collectively "Loomis"), pursuant to

21  11 U.S.C. 362(d), request immediate relief from the automatic stay imposed by 11 U.S.C.

22
23  362(a).  Specifically, Loomis requests that the stay be lifted to evict debtor Kurt Tompkins

24  ("Tompkins") from property owned by Loomis in which Tompkins has no interest and is

25  not part of the bankruptcy estate.  In addition, Loomis seeks leave to file an answer and

26
27  counterclaim related to the failed sale of the property recently filed by Tompkins.

28

Concurrently filed with this Motion is the Declaration of Kevin C. Barrett requesting that this Court shorten any objection or opposition period and waive any say rights or requirements under the rules to permit Movants to immediately proceed with the pending McDowell Mountain Justice Court eviction proceeding, Case No. CC2010238038.

## MEMORANDUM OF POINTS AND AUTHORITIES

### JURISDICTION AND VENUE

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2. This Motion is made pursuant to 11 U.S.C. § 362(d)(1) and Rules 4001 and 9014, Fed. R. Bankr., and L. Bankr. R. 4001-1.

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. Kurt Tompkins filed a voluntary Chapter 13 Bankruptcy Petition on May 18, 2010.

### BACKGROUND

Loomis, at all relevant times, were the owners of real property located at 7240 E. Sweetwater Ave., Phoenix Arizona 85260 (the "Subject Property"). (See Exhibit A attached to this Motion).

Loomis and Tompkins entered into a residential resale real estate purchase contract in May of 2009 for the Subject Property. (Exhibit B).

As part of the purchase agreement, Tompkins was granted immediate possession of the Subject Property.

As part of the sale, Tompkins deposited $150,000 in earnest money secured by a Promissory Note.

Completion of the sale of the Subject Property was contingent on Tompkins securing adequate financing in his own name.   Until that time, Tompkins agreed to pay the mortgages on the Subject Property that were in Loomis' name.

Tompkins stopped paying the mortgages in November 2009, breaching the purchase agreement.

As a result of Tompkins' failure to pay the mortgages, Loomis received Notice of a Trustee's Sale on the Subject Property on or about April 16, 2010. (Exhibit C).

Counsel for Loomis notified Tompkins on April 27, 2010 that he was in material breach of the purchase agreement by failing to pay the mortgages.  Loomis cancelled escrow as of that date and requested that Tompkins vacate the Subject Property.

On May 6, 2010, Tompkins instituted an action against Loomis, Maricopa County Superior Court Case No. CV2010-014803, to collect on the $150,000 Promissory Note as a result of the cancellation of the sale of the Subject Property. (Exhibit D).

Loomis does not have to answer Tompkins' complaint until June 1, 2010, at which time they intend to file a counterclaim for breach of contract, fraud, declaratory relief that the note is void, and to clear title on the Subject Property.

The lawsuit to collect on the note was not identified in Tompkins' bankruptcy Petition, nor was the Promissory Note upon which the suit is based listed as an asset of Tompkins'.

On May 7, 2010, Loomis instituted an eviction action against Tompkins.  This action was dismissed because Tompkins successfully evaded service of notice of the

action.

On May 14, 2010, Loomis instituted a second action against Tompkins, McDowell Mountain Justice Court Case No. CC2010238038. The eviction hearing was scheduled for May 20, 2010. (Exhibit E).

Tompkins filed for bankruptcy on May 18, 2010.

On May 20, 2010, the Justice Court continued the hearing date for the eviction action pending relief from the automatic stay from this Court.

Because the sale was cancelled and never completed, Tompkins has no interest in the Subject Property. He has not listed any interest in the Subject Property in his bankruptcy Petition. Tompkins has listed a condominium on Scottsdale Road as his primary residence.

Loomis needs to secure immediate possession of the Subject Property to use as their primary residence. Loomis is currently renting alternate housing on a month to month basis.

Loomis needs to secure immediate possession of the Subject Property and to use it as their primary residence to prevent the pending foreclosure. Possession and use of the premises is the last, best chance Loomis has to work with the banks to avoid foreclosure.

## ARGUMENT

Cause exists to lift the stay to allow Loomis to regain possession of real property occupied by Tompkins. Loomis must immediately regain possession as part of their effort to stop the pending July 19, 2010 foreclosure proceeding caused by Tompkins' failure to pay the mortgage pursuant to the now cancelled sale of the Subject Property.

4

"Despite the importance of the automatic stay as a vital protection of the bankruptcy Debtor, see Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992), Section362(d)(1) . . . allows a bankruptcy court to grant relief from automatic stay for cause." In re Delaney-Morin, 304 B.R. 365, 368 (9th Cir. B.A.P. 2003). Such relief may include terminating, annulling, modifying, or conditioning such stay. Id. "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." Macdonald v. Macdonald (In re MacDonald), 755 f.2D 715, 717 (9th Cir. 1985).

Bankruptcy courts regularly grant relief from the automatic stay to allow the owner of property to evict the Debtor and regain possession of the property that the Debtor has no interest in or right to posses. See, e.g. In re Pulcini, Bkrtcy.W.D.Pa.2001, 261 B.R. 836;   In re Nasir, Bkrtcy.E.D.Va.1997, 217 B.R. 995.; In re Odd's-N-End's, Inc., Bkrtcy.W.D.N.Y.1994, 171 B.R. 10.; In re Knight Jewelry, Bkrtcy.W.D.Mo.1994, 168 B.R. 199.

The Subject Property is not part of the bankruptcy estate. The Subject Property is not identified on Tompkins' bankruptcy Petition, which lists his primary residence as 5760 N. Scottsdale Avenue.

Tompkins has no ownership or equitable interest in the Subject Property whatsoever.  Tompkins is simply a buyer who breached a purchase contract, and as a result of that breach lost the right to occupy and possess the Subject Property. He now refuses to allow the rightful owners of the Subject Property to possess it. Tompkins has

no legal right to posses the Subject Property, putting him in no better position than a trespasser. In re Cowboys, Inc., Bkrtcy.S.D.Fla.1982, 24 B.R. 15.

Good cause exists to allow Loomis to continue the pending eviction action against Tompkins. As this Court knows, an eviction action only deals with the right to possess the property and nothing else. Tompkins has no right to posses the Subject Property. Because Tompkins does not have an interest in the Subject Property, his bankruptcy filing does not stay the pending foreclosure action. Loomis risks suffering irreparable harm due to foreclosure if they are not allowed to complete the eviction process, regain immediate possession of the Subject Property, and then work with the mortgage companies to bring current and/or restructure the mortgages.

Good cause also exists to lift the stay as to the action Tompkins filed against Loomis on the $150,000 Note. The note was part of the failed sale of the Subject Property. Resolving, or at least actively continuing the process of resolving, the validity of that Note may impact Loomis' ability to restructure the current debt on the Subject Property and prevent the foreclosure put in motion by Tompkins' breach of the purchase contract.

## CONCLUSION

WHEREFORE, Loomis respectfully requests that the Court enter an order in its favor as follows:

A.     Granting its Motion for Relief from the Automatic Stay;

B.     Allowing Loomis to proceed with the pending eviction action and/or to institute a new action to evict Tompkins from 7240 E. Sweetwater Ave., Scottsdale,

Arizona. Loomis agrees not to take any action on any judgment that is rendered in this action for costs and fees without further relief from the stay from this Court.

C. Allowing Loomis to file its answer and counterclaim in the action instituted by Tompkins on the $150,000 note and to continue litigation of that case. Loomis agrees not to take any action on any judgment that is rendered in this action for costs and fees without further relief from the stay from this Court.

D. Granting Loomis such additional and further relief as the Court deems appropriate.

DATED this 24th day of May, 2010.

GRAIF BARRETT & MATURA, P.C.

By  /s/ Kevin C. Barrett
Kevin C. Barrett
Attorneys for Movants

ORIGINAL of the foregoing electronically
filed this 24th day of May, 2010.

COPIES of the foregoing
mailed this same date to:

United States Trustee's Office
230 North First Avenue, Suite 201
Phoenix, Arizona 85003

Russell Brown
3838 North Central Avenue, Suite 800
Phoenix, Arizona  85012
*Trustee*

Tim Mackey
Mackey Law Firm
7001 North Scottsdale Road, Suite 260
Scottsdale, Arizona  85253
*Attorney for Debtor*

 /s/ Kelly Donaldson

7

**EXHIBIT A**

OFFICIAL RECORDS OF
# Unofficial
# Document

Recorded at the request of *Capital Title Agency Inc.*
when recorded mail to

**LAURA S. KIMBROUGH**
**7240 EAST SWEETWATER AVENUE**
**SCOTTSDALE, AZ 85260**



# Warranty Deed

### Community Property with Right of Survivorship

Escrow No. 47060601

For the consideration of Ten Dollars, and other valuable considerations, **LAURA S. KIMBROUGH, a married man, as his sole and separate property** , do/does hereby convey to

THOMAS R. LOOMIS and LAURA S. KIMBROUGH, husband and wife, as community property with right of survivorship, the following real property situated in the county of **Maricopa** , State of Arizona:

Lot Thirty- nine (39), SWEETWATER STREET EAST, according to the plat of record of the County Recorder of Maricopa County, Arizona, in Book 190 of Maps, page 7.

SUBJECT TO: Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations, and liabilities as may appear of record.

And I or we do warrant the title against all persons whomsoever, subject to the matters above set forth.

The Grantees by signing the acceptance below evidence their intention to acquire said premises as community property with right of survivorship and not as joint tenants or as tenants in common..

Dated September 22, 2006

Accepted and approved:

This transfer is exempt from
the affidavit of value pursuant
to A.R.S. 11-1134 _B-9_

Grantees

**THOMAS R. LOOMIS**

Grantors

**LAURA S. KIMBROUGH**

**LAURA S. KIMBROUGH**

# See Notary Acknowledgment Attached

# Notary Acknowledgment

STATE OF ARIZONA
COUNTY OF **MARICOPA**            } ss:

This instrument was acknowledged before me this _22_ day of _Sept_ _____, 20_06_ by:
**LAURA S. KIMBROUGH**  B Thomas R Loomis

My Commission Expires: _12/31/06_

_____
Notary Public

**ELAINA KETTINGER**
Notary Public – Arizona
Maricopa County
Expires 12/31/06

STATE OF ARIZONA
COUNTY OF **MARICOPA**            } ss:

This instrument was acknowledged before me this _____ day of _____, 20___ by:

Unofficial Document

My Commission Expires: _____

_____
Notary Public

**EXHIBIT B**



# RESIDENTIAL RESALE REAL ESTATE
# PURCHASE CONTRACT

The printed portion of this contract has been approved by the Arizona Association of REALTORS® ("AAR"). This is intended to be a binding contract. No representation is made as to the legal validity or adequacy of any provision or the tax consequences thereof. If you desire legal, tax or other professional advice, consult your attorney, tax advisor, insurance agent or professional consultant.



## 1. PROPERTY

1a.  1. BUYER: **KURT TOMPKINS**

   BUYER'S NAME(S)

   2. SELLER: **THOMAS R. LOOMIS & LAURA S. KIMBROUGH** *Loomis* or ☐ as identified in section 9c

   SELLER'S NAME(S)

   3 Buyer agrees to buy and Seller agrees to sell the real property with all improvements, fixtures, and appurtenances thereon
   4 or incidental thereto, plus the personal property described herein (collectively the "Premises").

1b.  5 Premises Address **7240 E. SWEETWATER AVE.** _____ Assessor's # _____

   6 City **SCOTTSDALE** ____ County **MARICOPA** ____ AZ, Zip Code: **85260**

   7 Legal Description: **LOT 39, SWEETWATER STREET EAST, ACCORDING TO**

1c.  8 $ **1,350,000** ___ Full Purchase Price, paid as outlined below **BOOK 190 OF MAPS, PAGE 7,**

   9 $ _____ Earnest money **RECORDS OF MARICOPA COUNTY, AZ**

   10 $ **SEE ADDENDUM TO PURCHASE CONTRACT** _____

   11 $ _____

   12 _____

1d.  13 Close of Escrow: Close of Escrow ("COE") shall occur when the deed is recorded at the appropriate county recorder's office
   14 Buyer and Seller shall comply with all terms and conditions of this Contract, execute and deliver to Escrow Company all
   15 closing documents, and perform all other acts necessary in sufficient time to allow COE to occur on
   16 **SEE ADDENDUM TO PURCHASE CONTRACT** ("COE Date"). If Escrow Company or recorder's office is closed on

   MONTH      DAY      YEAR

   17 COE Date, COE shall occur on the next day that both are open for business

   18 Buyer shall deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down
   19 payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available funds
   20 to Escrow Company, in a sufficient amount and in sufficient time to allow COE to occur on COE Date.

1e.  21 Possession: Seller shall deliver possession, occupancy, access to keys and/or means to operate all locks, mailbox,
   22 security system/alarms, and all common area facilities to Buyer at COE or ☒ **IMMEDIATELY**
   23 Broker(s) recommend that the parties seek appropriate counsel from insurance, legal, tax, and accounting professionals
   24 regarding the risks of pre-possession or post-possession of the Premises.

1f.  25 Addenda Incorporated: ☐ Assumption and Carryback ☐ Buyer Contingency ☐ Domestic Water Well ☐ HUD forms
   26 ☐ H.O.A. ☐ Lead-Based Paint Disclosure ☐ Additional Clause ☐ On-site Wastewater Treatment Facility
   27 ☒ Other **ADDENDUM TO PURCHASE CONTRACT**

1g.  28 Fixtures and Personal Property: Seller agrees that all existing fixtures on the Premises, and any existing personal
   29 property specified herein, shall be included in this sale, including the following

| 30. • free-standing range/oven | • flush-mounted speakers | • outdoor landscaping, fountains, and lighting |
| 31 • built-in appliances | • attached fireplace equipment | • water-misting systems |
| 32 • light fixtures | • window and door screens, sun screens | • solar systems |
| 33 • ceiling fans | • storm windows and doors | • pellet, wood-burning or gas-log stoves |
| 34 • towel, curtain and drapery rods | • shutters and awnings | • timers |
| 35 • draperies and other window coverings | • garage door openers and controls | • mailbox |
| 36. • attached floor coverings | • attached TV/media antennas/satellite dishes | • storage sheds |

Initials _____ SELLER _____ SELLER   ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05   Initials: _____ BUYER _____ BUYER

Page 1 of 9

ICORRIDOR realty group 7315 North 16th Street #201 Phoenix, AZ 85020
Phone (602) 997 - 3620     Fax (602) 997 - 0360     Catrine Burgueno

Produced with ZipForm™ by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

hart

37. If owned by the Seller, the following items also are included in this sale:

| 38. | · pool and spa equipment (including any | · security and/or fire systems | · water softeners |
| 39. | mechanical or other cleaning systems) | and/or alarms | · water purification systems |

40  Additional existing personal property included in this sale (if checked):  ☐ refrigerator  ☐ washer  ☐ dryer

41  As described _____

42  _____

43  ☐ Other _____

44  _____

45  _____

46 Additional existing personal property included shall not be considered part of the Premises and shall be transferred with no
47 monetary value, and free and clear of all liens or encumbrances

48 Fixtures and leased items NOT included: _____

49 IF THIS IS AN ALL CASH SALE, GO TO SECTION 3.

## 2. FINANCING

2a.  50 Loan Contingency. Buyer's obligation to complete this sale is contingent upon Buyer obtaining loan approval for the loan described
     51 in the AAR Loan Status Report without conditions no later than COE Date. If Buyer is unable to obtain loan approval without
     52 conditions by COE Date, Buyer shall deliver a notice of the inability to obtain loan approval without conditions to Seller or Escrow
     53 Company no later than COE Date

2b.  54 Unfulfilled Loan Contingency: This Contract shall be cancelled and Buyer shall be entitled to a return of the Earnest Money if
     55 after diligent and good faith effort, Buyer is unable to obtain loan approval without conditions by COE Date. Buyer is aware that
     56 failure to have the down payment or other funds due from Buyer necessary to obtain the loan approval without conditions and
     57 close this transaction is not an unfulfilled loan contingency. Buyer acknowledges that prepaid items paid separately from earnest
     58 money are not refundable.

2c.  59 Appraisal Contingency: Buyer's obligation to complete this sale is contingent upon an appraisal of the Premises by an appraiser
     60 acceptable to lender for at least the sales price. If the Premises fails to appraise for the sales price, Buyer has five (5) days after notice
     61 of the appraised value to cancel this Contract and receive a refund of the Earnest Money or the appraisal contingency will be waived.

2d.  62 Loan Status Report: The AAR Loan Status Report ("LSR") with, at a minimum, the Buyer's Loan Information section
     63 completed, describing the current status of the Buyer's proposed loan, is attached hereto and incorporated herein by reference

2e.  64 Loan Application: Unless previously completed, within five (5) days after Contract acceptance, Buyer shall (i) complete, sign
     65 and deliver to the lender a loan application with requested disclosures and documentation; (ii) grant lender
     66 permission to access Buyer's Trimerged Residential Credit Report; and (iii) pay all required loan application fees

2f.  67 Loan Processing During Escrow: Buyer agrees to diligently work to obtain the loan and will promptly provide the lender with
     68 all additional documentation required  Buyer instructs the lender to provide loan status updates to Broker(s) and Seller  Buyer
     69 shall sign all loan documents no later than three (3) days prior to the COE Date.

2g.  70 Type of Financing: ☐ Conventional ☐ FHA ☐ VA ☐ Assumption ☐ Seller Carryback ☒ *SEE ADDENDUM TO*
     71 (If financing is to be other than new financing, see attached addendum.)  *PURCHASE CONTRACT*

2h.  72 Loan Costs: Private Mortgage Insurance is required for certain types of loans and shall be paid by Buyer at COE in a
     73 manner acceptable to lender. The following may be paid by either party:

     74 Discount points shall be paid by: ☒ Buyer ☐ Seller ☐ Other _____

     75 Discount points shall not exceed: _____/_____ total points (Does not include loan origination fee)

     76 A L T A Lender Title Insurance Policy shall be paid by  ☒ Buyer ☐ Seller

     77 Loan Origination Fee (Not to exceed _____/_____ % of loan amount) shall be paid by ☒ Buyer ☐ Seller

     78 Appraisal Fee, when required by lender, shall be paid by ☒ Buyer ☐ Seller ☐ Other _____

2i.  79 Other Loan Costs: In the event of an FHA or VA loan, Seller agrees to pay up to $ _____*N/A*_____ of loan
     80 costs not permitted to be paid by the Buyer, in addition to the other costs Seller has agreed to pay herein. In addition, for VA
     81 loans, Seller agrees to pay the escrow fee  All other costs of obtaining the loan shall be paid by the Buyer

Initials: _____ / _____     ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05     Initials: _____ / _____
        SELLER   SELLER                                                                  BUYER    BUYER

Produced with ZipForm™ by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                hart

**2j.** 82 Changes: Buyer shall immediately notify Seller of any changes in the loan program, financing terms, or lender described in
83. the LSR and shall only make any such changes without the prior written consent of Seller if such changes do not adversely
84. affect Buyer's ability to obtain loan approval without conditions, increase Seller's closing costs, or delay COE.

**2k.** 85. FHA Notice (FHA Buyer Initials Required): HUD does not warrant the condition of the property By initialing below, Buyer acknowl-
86. edges receipt of Form HUD-92564-CN, "For Your Protection: Get a Home Inspection." Buyer further acknowledges that such
87. form was signed at or before the Contract date. Signed HUD-92564-CN is attached and made a part of this Purchase Contract.

88                 **(FHA BUYER'S INITIALS REQUIRED)**
                                        BUYER       BUYER

## 3. TITLE AND ESCROW

**3a.** 89 Escrow: This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the
90. terms of this Contract shall be:                _LYNNE RUSSELL_

91. _STEWART TITLE & TRUST OF PHOENIX, INC._  _480-557-4561_ / _480-776-6576_
           ESCROW/TITLE COMPANY                            PHONE/FAX

**3b.** 92 Title and Vesting: Buyer will take title as determined before COE. Taking title may have significant legal, estate planning
93 and tax consequences. Buyer should obtain legal and tax advice

**3c.** 94. Title Commitment and Title Insurance: Escrow Company is hereby instructed to obtain and deliver to Buyer and Seller
95 directly, addressed pursuant to 8t and 9c or as otherwise provided, a Commitment for Title Insurance together with
96. complete and legible copies of all documents that will remain as exceptions to Buyer's policy of Title Insurance ("Title
97. Commitment"). including but not limited to Conditions, Covenants and Restrictions ("CC&Rs"); deed restrictions, and
98. easements Buyer shall have five (5) days after receipt of the Title Commitment and after receipt of notice of any
99. subsequent exceptions to provide notice to Seller of any items disapproved. Seller shall convey title by general warranty
100. deed. Buyer shall be provided at Seller's expense an American Land Title Association ("ALTA") Homeowner's Title
101 Insurance Policy, or if not available, an ALTA Residential Title Insurance Policy ("Plain Language"/1-4 units") or, if not
102 available, a Standard Owner's Title Insurance Policy, showing title vested in Buyer. Buyer may acquire extended coverage
103. at Buyer's own additional expense

**3d.** 104. Additional Instructions: (i) Escrow Company shall promptly furnish notice of pending sale that contains the name and
105. address of the Buyer to any homeowner's association in which the Premises is located. (ii) If the Escrow Company is also
106. acting as the title agency but is not the title insurer issuing the title insurance policy, Escrow Company shall deliver to the
107. Buyer and Seller, upon deposit of funds, a closing protection letter from the title insurer indemnifying the Buyer and Seller for
108. any losses due to fraudulent acts or breach of escrow instructions by the Escrow Company. (iii) All documents necessary to
109. close this transaction shall be executed promptly by Seller and Buyer in the standard form used by Escrow Company. Escrow
110 Company shall modify such documents to the extent necessary to be consistent with this Contract (iv) Escrow Company
111 fees, unless otherwise stated herein, shall be allocated equally between Seller and Buyer. (v) Escrow Company shall send
112. to all parties and Broker(s) copies of all notices and communications directed to Seller, Buyer and Broker(s). (vi) Escrow
113 Company shall provide Broker(s) access to escrowed materials and information regarding the escrow. (vii) If an Affidavit of
114. Disclosure is provided, Escrow Company shall record the Affidavit at COE.

**3e.** 115 Tax Prorations: Real property taxes payable by the Seller shall be prorated to COE based upon the latest tax information available

**3f.** 116. Release of Earnest Money: In the event of a dispute between Buyer and Seller regarding any Earnest Money deposited with Escrow
117. Company, Buyer and Seller authorize Escrow Company to release Earnest Money pursuant to the terms and conditions of this Contract
118. in its sole and absolute discretion Buyer and Seller agree to hold harmless and indemnify Escrow Company against any claim, action
119 or lawsuit of any kind, and from any loss, judgment, or expense, including costs and attorney fees, arising from or relating in any way to
120. the release of Earnest Money.

**3g.** 121. Prorations of Assessments and Fees: All assessments and fees that are not a lien as of the COE, including homeowner's
122 association fees, rents, irrigation fees, and, if assumed, insurance premiums, interest on assessments, interest on
123 encumbrances, and service contracts, shall be prorated as of COE or ☐ Other: _____

**3h.** 124 Assessment Liens: The amount of any assessment, other than homeowner's association assessments, that is a lien as of
125 the COE, shall be ☒ paid in full by Seller ☐ prorated and assumed by Buyer. Any assessment that becomes a lien after
126 COE is the Buyer's responsibility.

**3i.** 127 IRS and FIRPTA Reporting: Seller agrees to comply with IRS reporting requirements. If applicable, Seller agrees to
128 complete, sign, and deliver to Escrow Company a certificate indicating whether Seller is a foreign person or a non-resident
129 alien pursuant to the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller acknowledge that if the Seller
130 is a foreign person, the Buyer must withhold a tax equal to 10% of the purchase price, unless an exemption applies.

Initials: ____ ____                                                 Initials: ____ ____
  SELLER     SELLER         ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05                  BUYER     BUYER

Produced with ZipForm™ by zipLogix 18070 Fifteen Mile Road Fraser, Michigan 48026 www.zipLogix.com

# 4. DISCLOSURES

**4a. 131. Seller Property Disclosure Statement ("SPDS"):** Seller shall deliver a completed AAR SPDS form to the Buyer within five
132. (5) days after Contract acceptance. Buyer shall provide notice of any SPDS items disapproved within the Inspection Period
133. or five (5) days after receipt of the SPDS, whichever is later.

**4b. 134. Insurance Claims History:** Seller shall deliver to Buyer a written five-year insurance claims history regarding Premises (or
135. a claims history for the length of time Seller has owned the Premises if less than five years) from Seller's insurance
136. company or an insurance support organization or consumer reporting agency, or if unavailable from these sources from
137. Seller, within five (5) days after Contract acceptance. (Seller may obscure any reference to date of birth or social
138. security number from the document). Buyer shall provide notice of any items disapproved within the Inspection Period or
139. five (5) days after receipt of the claims history, whichever is later.

**4c. 140. Lead-Based Paint Disclosure:** If the Premises were built prior to 1978, the Seller shall: (i) notify the Buyer of any known
141. lead-based paint ("LBP") or LBP hazards in the Premises; (ii) provide the Buyer with any LBP risk assessments or
142. inspections of the Premises in the Seller's possession (iii) provide the Buyer with the Disclosure of Information on
143. Lead-based Paint and Lead-based Paint Hazards, and any report, records, pamphlets, and/or other materials referenced
144. therein, including the pamphlet "Protect Your Family from Lead in Your Home" (collectively "LBP Information"). Buyer shall return
145. a signed copy of the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards to Seller prior to COE.

146. ☐ LBP Information was provided prior to Contract acceptance and Buyer acknowledges the opportunity to conduct LBP risk
147. assessments or inspections during Inspection Period

148. ☒ Seller shall provide LBP Information within five (5) days after Contract acceptance. Buyer may within ten (10) days or
149. _____ days after receipt of the LBP Information conduct or obtain a risk assessment or inspection of the Premises for
150. the presence of LBP or LBP hazards ("Assessment Period"). Buyer may within five (5) days after receipt of the LBP
151. Information or five (5) days after expiration of the Assessment Period cancel this Contract.

152.  If Premises were constructed prior to 1978, BUYER'S INITIALS REQUIRED _____ BUYER

153.  If Premises were constructed in 1978 or later, BUYER'S INITIALS REQUIRED _____ BUYER

**4d. 154. Affidavit of Disclosure:** If the Premises is located in an unincorporated area of the county, and five or fewer parcels of
155. property other than subdivided property are being transferred, the Seller shall deliver a completed Affidavit of Disclosure in
156. the form required by law to the Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any
157. of Disclosure items disapproved within the Inspection Period or five (5) days after receipt of the Affidavit of Disclosure,
158. whichever is later.

**4e. 159. Changes During Escrow:** Seller shall immediately notify Buyer of any changes in the Premises or disclosures made
160. herein, in the SPDS, or otherwise. Such notice shall be considered an update of the SPDS. Unless Seller is already
161. obligated by Section 5a, or otherwise by this Contract or any amendments hereto, to correct or repair the changed item
162. disclosed, Buyer shall be allowed five (5) days after delivery of such notice to provide notice of disapproval to Seller

# 5. WARRANTIES

**5a. 163. Seller Warranties:** Seller warrants and shall maintain and repair the Premises so that, at the earlier of possession or COE (i) all
164. heating, cooling, mechanical, plumbing, and electrical systems (including swimming pool and/or spa, motors, filter
165. systems, cleaning systems, and heaters, if any), free-standing range/oven, and built-in appliances will be in working
166. condition; (ii) all other agreed upon repairs and corrections will be completed pursuant to Section 6j; (iii) the Premises,
167. including all additional existing personal property included in the sale, will be in substantially the same condition as on the date of
168. Contract acceptance, and (iv) all personal property not included in the sale and all debris will be removed from the Premises.

**5b. 169. Warranties that Survive Closing:** Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects
170. and any information concerning the Premises known to Seller, excluding opinions of value, which materially and adversely
171. affect the consideration to be paid by Buyer. Prior to the COE, Seller warrants that payment in full will have been made for
172. all labor, professional services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding
173. the COE in connection with the construction, alteration, or repair of any structure on or improvement to the Premises. Seller
174. warrants that the information regarding connection to a sewer system or on-site wastewater treatment facility (conventional
175. septic or alternative) is correct to the best of Seller's knowledge.

Initials: _____  _____ 
SELLER  SELLER

Initials: _____ / _____
BUYER  BUYER

**5c. 176 Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affect
177. the Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Premises or
178. COE, Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts
179 the Premises. Buyer warrants that Buyer is not relying on any verbal representations concerning the Premises
180 except disclosed as follows: _____
181 _____

# 6. DUE DILIGENCE

**6a. 182 Inspection Period:** Buyer's Inspection Period shall be ten (10) days or _____ days after Contract
183. acceptance. During the Inspection Period, Buyer, at Buyer's expense, shall (i) conduct all desired physical, environmental,
184. and other types of inspections and investigations to determine the value and condition of the Premises, (ii) make inquiries
185 and consult government agencies, lenders, insurance agents, architects, and other appropriate persons and entities
186. concerning the suitability of the Premises and the surrounding area; (iii) investigate applicable building, zoning, fire, health,
187 and safety codes to determine any potential hazards, violations or defects in the Premises; and (iv) verify any material multiple
188. listing service ("MLS") information. If the presence of sex offenders in the vicinity or the occurrence of a disease, natural death,
189. suicide, homicide or other crime on or in the vicinity is a material matter to the Buyer, it must be investigated by the Buyer
190 during the Inspection Period. Buyer shall keep the Premises free and clear of liens, shall indemnify and hold Seller
191. harmless from all liability, claims, demands, damages, and costs, and shall repair all damages arising from the inspections.
192 Buyer shall provide Seller and Broker(s) upon receipt, at no cost, copies of all inspection reports concerning the Premises
193 obtained by Buyer. Buyer is advised to consult the Arizona Department of Real Estate *Buyer Advisory* provided by AAR to
194 assist in Buyer's due diligence inspections and investigations.

**6b. 195 Square Footage:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH
196. THE REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A
197 MATERIAL MATTER TO THE BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION PERIOD.

**6c. 198 Wood-Destroying Organism or Insect Inspection:** IF CURRENT OR PAST WOOD-DESTROYING ORGANISMS OR
199. INSECTS (SUCH AS TERMITES) ARE A MATERIAL MATTER TO THE BUYER, THESE ISSUES MUST BE
200. INVESTIGATED DURING THE INSPECTION PERIOD. The Buyer shall order and pay for all wood-destroying organism or
201. insect inspections performed during the Inspection Period. If the lender requires an updated Wood-Destroying Organism or
202 Insect Inspection Report prior to COE, it will be performed at Buyer's expense

**6d. 203 Flood Hazard:** Flood hazard designations or the cost of flood hazard insurance shall be determined by Buyer during the
204 Inspection Period. If the Premises are situated in an area identified as having any special flood hazards by any
205. governmental entity, the lender may require the purchase of flood hazard insurance. Special flood hazards may also affect
206. the ability to encumber or improve the Premises.

**6e. 207 Insurance:** IF HOMEOWNER'S INSURANCE IS A MATERIAL MATTER TO THE BUYER, BUYER SHALL APPLY FOR
208. AND OBTAIN WRITTEN CONFIRMATION OF THE AVAILABILITY AND COST OF HOMEOWNER'S INSURANCE FOR
209. THE PREMISES FROM BUYER'S INSURANCE COMPANY DURING THE INSPECTION PERIOD. Buyer understands that
210. any homeowner's, fire, casualty, or other insurance desired by Buyer or required by lender should be in place at COE

**6f. 211 Sewer or On-site Wastewater Treatment System:** The Premises are connected to a.
212    ☒ sewer system; ☐ septic system, ☐ alternative system

213. IF A SEWER CONNECTION IS A MATERIAL MATTER TO THE BUYER, IT MUST BE INVESTIGATED DURING THE
214. INSPECTION PERIOD. If the Premises are served by a septic or alternative system, the AAR On-site Wastewater Treatment
215. Facility Addendum is incorporated herein by reference.
216.                                        (BUYER'S INITIALS REQUIRED)         ___BUYER___ ___BUYER___

**6g. 217 Swimming Pool Barrier Regulations:** During the Inspection Period, Buyer agrees to investigate all applicable state,
218. county, and municipal Swimming Pool barrier regulations and agrees to comply with and pay all costs of compliance
219. with said regulations prior to occupying the Premises, unless otherwise agreed in writing. If the Premises contains a Swimming
220. Pool, Buyer acknowledges receipt of the Arizona Department of Health Services approved private pool safety notice

221.                                        (BUYER'S INITIALS REQUIRED)         ___BUYER___ ___BUYER___

Initials: ___SELLER___ ___SELLER___    ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05    Initials: ___BUYER___ ___BUYER___

Produced with ZipForm™ by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                                                hart

6h. 222. **BUYER ACKNOWLEDGMENT:** BUYER RECOGNIZES, ACKNOWLEDGES, AND AGREES THAT BROKER(S) ARE NOT
223. QUALIFIED, NOR LICENSED, TO CONDUCT DUE DILIGENCE WITH RESPECT TO THE PREMISES OR THE
224. SURROUNDING AREA. BUYER IS INSTRUCTED TO CONSULT WITH QUALIFIED LICENSED PROFESSIONALS TO
225. ASSIST IN BUYER'S DUE DILIGENCE EFFORTS. BECAUSE CONDUCTING DUE DILIGENCE WITH RESPECT TO THE
226. PREMISES AND THE SURROUNDING AREA IS BEYOND THE SCOPE OF THE BROKER'S EXPERTISE AND
227. LICENSING, BUYER EXPRESSLY RELEASES AND HOLDS HARMLESS BROKER(S) FROM LIABILITY FOR ANY
228. DEFECTS OR CONDITIONS THAT COULD HAVE BEEN DISCOVERED BY INSPECTION OR INVESTIGATION.

229.                                                    **(BUYER'S INITIALS REQUIRED)** _____
                                                                                          BUYER      BUYER

6i. 230. **Inspection Period Notice:** Prior to expiration of the Inspection Period, Buyer shall deliver to Seller a signed notice of any
231. items disapproved. AAR's Buyer's Inspection Notice and Seller's Response form is available for this purpose. Buyer shall
232. conduct all desired inspections and investigations prior to delivering such notice to Seller and all Inspection Period items
233. disapproved shall be provided in a single notice.

6j. 234. **Buyer Disapproval:** If Buyer, in Buyer's sole discretion, disapproves of items as allowed herein, Buyer shall deliver to Seller
235. notice of the items disapproved and state in the notice that Buyer elects to either:
236.             (1) immediately cancel this Contract and all Earnest Money shall be released to Buyer, or
237.             (2) provide the Seller an opportunity to correct the items disapproved, in which case:
238.                   (a) Seller shall respond in writing within five (5) days or _____ days after delivery to Seller of Buyer's notice of
239.                   items disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall
240.                   conclusively be deemed Seller's refusal to correct any of the items disapproved.
241.                   (b) If Seller agrees in writing to correct items disapproved, Seller shall correct the items, complete any
242.                   repairs in a workmanlike manner and deliver any paid receipts evidencing the corrections and repairs
243.                   to Buyer three (3) days or _____ days prior to COE Date.
244.                   (c) If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel
245.                   this Contract within five (5) days after delivery of Seller's response or after expiration of the time for
246.                   Seller's response, whichever occurs first, and all Earnest Money shall be released to Buyer. If Buyer does
247.                   not cancel this Contract within the five (5) days as provided, Buyer shall close escrow without correction
248.                   of those items that Seller has not agreed in writing to correct.

249. VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS. Only a written agreement signed by both parties will
250. extend response times or cancellation rights.

251. BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN
252. THE SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE
253. TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.

6k. 254. **Notice of Non-Working Warranted Items:** Buyer shall provide Seller with notice of any non-working warranted item(s) of
255. which Buyer becomes aware during the Inspection Period or the Seller warranty for that item(s) shall be waived. Delivery of
256. such notice shall not affect Seller's obligation to maintain or repair the warranted item(s).

6l. 257. **Home Warranty Plan:** Buyer and Seller are advised to investigate the various home warranty plans available for purchase
258. The parties acknowledge that different home warranty plans have different coverage options, exclusions, limitations, service
259. fees and most plans exclude pre-existing conditions.

260.    ☐ A Home Warranty Plan will be ordered by ☐ Buyer or ☐ Seller with the following optional coverage

261.    _____ , to be issued by _____ at a cost not to exceed

262.    $_____ , to be paid for by ☐ Buyer ☐ Seller

263.    ☐ Buyer declines the purchase of a Home Warranty Plan.

6m. 264. **Walkthrough(s)** Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct walkthrough(s) of the Premises for the
265. purpose of satisfying Buyer that any corrections or repairs agreed to by the Seller have been completed, warranted items are in
266. working condition and that the Premises is in substantially the same condition as of the date of Contract acceptance. If Buyer does
267. not conduct such walkthrough(s), Buyer releases Seller and Broker(s) from liability for any defects that could have been discovered.

6n. 268. **Seller's Responsibility Regarding Inspections and Walkthrough(s):** Seller shall make the Premises available for all
269. inspections and walkthrough(s) upon reasonable notice by Buyer. Seller shall, at Seller's expense, have all utilities on,
270. including any propane, until COE to enable Buyer to conduct these inspections and walkthrough(s).

Initials: _____        Initials: _____
          SELLER    SELLER                 BUYER    BUYER

# 7. REMEDIES

7a. 271. **Cure Period:** A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any
272. provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If
273. the non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall
274. become a breach of Contract.

7b. 275. **Breach:** In the event of a breach of Contract, the non-breaching party may cancel this Contract and/or proceed against the
276. breaching party in any claim or remedy that the non-breaching party may have in law or equity, subject to the Alternative
277. Dispute Resolution obligations set forth herein. In the case of the Seller, because it would be difficult to fix actual damages
278. in the event of Buyer's breach, the Earnest Money may be deemed a reasonable estimate of damages and Seller may, at
279. Seller's option, accept the Earnest Money as Seller's sole right to damages; and in the event of Buyer's breach arising from
280. Buyer's failure to deliver the notice required by Section 2a, or Buyer's inability to obtain loan approval due to the waiver of
281. the appraisal contingency pursuant to Section 2c, Seller shall exercise this option and accept the Earnest Money as Seller's
282. sole right to damages. An unfulfilled contingency is not a breach of Contract.

7c. 283. **Alternative Dispute Resolution ("ADR"):** Buyer and Seller agree to mediate any dispute or claim arising out of or relating
284. to this Contract in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All mediation costs
285. shall be paid equally by the parties. In the event that mediation does not resolve all disputes or claims, the unresolved
286. disputes or claims shall be submitted for binding arbitration. In such event, the parties shall agree upon an arbitrator and
287. cooperate in the scheduling of an arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute shall be
288. submitted to the American Arbitration Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate
289. Industry. The decision of the arbitrator shall be final and nonappealable. Judgment on the award rendered by the arbitrator
290. may be entered in any court of competent jurisdiction. Notwithstanding the foregoing, either party may opt out of binding
291. arbitration within thirty (30) days after the conclusion of the mediation conference by notice to the other and in such event
292. either party shall have the right to resort to court action.

7d. 293. **Exclusions from ADR:** The following matters are excluded from the requirement for ADR hereunder: (i) any action brought
294. in the Small Claims Division of an Arizona Justice Court (up to $2,500) so long as the matter is not thereafter transferred or
295. removed from the small claims division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed
296. of trust, mortgage, or agreement for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a
297. mechanic's lien; or (v) any matter that is within the jurisdiction of a probate court. Further, the filing of a judicial action to
298. enable the recording of a notice of pending action ("lis pendens"), or order of attachment, receivership, injunction, or other
299. provisional remedies shall not constitute a waiver of the obligation to submit the claim to ADR, nor shall such action
300. constitute a breach of the duty to mediate or arbitrate

7e. 301. **Attorney Fees and Costs:** The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating
302. to this Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney
303. fees, expert witness fees, fees paid to investigators, and arbitration costs.

# 8. ADDITIONAL TERMS AND CONDITIONS

8a. 304. _SEE ADDENDUM TO PURCHASE CONTRACT_
305. _____
306. _____
307. _____
308. _____
309. _____
310. _____
311. _____
312. _____
313. _____
314. _____
315. _____

Initials: [signature] SELLER / SELLER          Initials: [signature] BUYER / BUYER

**8b. 316 Risk of Loss:** If there is any loss or damage to the Premises between the date of Contract acceptance and COE or
317 possession, whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on
318 the Seller, provided, however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the
319 purchase price, either Seller or Buyer may elect to cancel the Contract.

**8c. 320 Permission:** Buyer and Seller grant Broker(s) permission to advise the public of this Contract.

**8d. 321 Arizona Law:** This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona

**8e. 322 Time is of the Essence:** The parties acknowledge that time is of the essence in the performance of the obligations
323 described herein

**8f. 324 Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed by
325 separate written agreement(s), which shall be delivered by Broker(s) to Escrow Company for payment at COE, if not previously paid.
326 If Seller is obligated to pay Broker(s), this Contract shall constitute an irrevocable assignment of Seller's proceeds at COE. If Buyer
327 is obligated to pay Broker(s), payment shall be collected from Buyer as a condition of COE. COMMISSIONS PAYABLE FOR THE
328 SALE, LEASING, OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY BOARD OR ASSOCIATION OF REALTORS®, OR
329 MULTIPLE LISTING SERVICE, OR IN ANY MANNER OTHER THAN BETWEEN THE BROKER AND CLIENT.

**8g. 330 Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original Contract. This Contract
331 and any other documents required by this Contract may be executed by facsimile or other electronic means and in any number of counterparts,
332 which shall become effective upon delivery as provided for herein, except that the Lead-Based Paint Disclosure Statement may not be signed
333 in counterpart. All counterparts shall be deemed to constitute one instrument, and each counterpart shall be deemed an original.

**8h. 334 Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and end at 11:59 p.m.

**8i. 335 Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event
336 from which the time period begins to run is not included and the last day of the time period is included. Contract acceptance
337 occurs on the date that the signed Contract (and any incorporated counter offer) is delivered to and received by the
338 appropriate Broker Acts that must be performed three days prior to the COE Date must be performed three full days prior
339 (i.e., if COE Date is Friday the act must be performed by 11:59 p.m. on Monday).

**8j. 340 Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller and
341 Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a writing
342 signed by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this Contract

**8k. 343 Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands that
344 any subsequent offer accepted by the Seller must be a backup offer contingent on the cancellation of this Contract

**8l. 345 Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by
346 delivering notice stating the reason for cancellation to the other party or to the Escrow Company. Cancellation shall become
347 effective immediately upon delivery of the cancellation notice

**8m. 348 Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in
349 writing and deemed delivered and received when (i) hand-delivered, (ii) sent via facsimile transmission, (iii) sent via
350 electronic mail, if email addresses are provided herein, or (iv) sent by recognized overnight courier service, and addressed
351 to Buyer as indicated in Section 8r, to Seller as indicated in Section 9a and to the Escrow Company indicated in Section 3a

**8n. 352 Earnest Money:** Earnest Money is in the form of: ☐ Personal Check ☒ Other: *SEE ADDENDUM*
353 If applicable, Earnest Money has been received by Broker named in Section 8r and upon acceptance of this offer will be
354 deposited with ☐ Escrow Company ☐ Broker's Trust Account

**8o. 355 Release of Broker(s):** Seller and Buyer hereby expressly release, hold harmless and indemnify Broker(s) in this
356 transaction from any and all liability and responsibility regarding financing, the condition, square footage, lot lines,
357 boundaries, value, rent rolls, environmental problems, sanitation systems, roof, wood infestation, building codes,
358 governmental regulations, insurance or any other matter relating to the value or condition of the Premises.

359. **(BUYER'S INITIALS REQUIRED)** _____
                                       BROKER    BUYER

**8p. 360 Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and
361 a signed copy delivered in person, by mail, facsimile or electronically, and received by Broker named in Section 8r
362 by _____, _____ at _____ ☐ a.m. ☐ p.m. Mountain Standard Time Buyer
363 may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received by this
364 date and time, this offer shall be deemed withdrawn and the Buyer's Earnest Money shall be returned

**8q. 365 THIS CONTRACT CONTAINS NINE PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. PLEASE ENSURE THAT
366 YOU HAVE RECEIVED AND READ ALL NINE PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND ATTACHMENTS.**

Initials: _____ _____     Initials: _____ _____
          SELLER  SELLER                BUYER   BUYER

**8r. 367** Broker on behalf of Buyer:

368 _____
PRINT SALESPERSON'S NAME        AGENT CODE        PRINT FIRM NAME        FIRM CODE

369 _____
FIRM ADDRESS

370 _____
TELEPHONE        FAX        STATE        ZIP CODE
EMAIL

**8s. 371** Agency Confirmation: The Broker named in Section 8r above is the agent of (check one):
372 ☐ the Buyer; ☐ the Seller; or ☐ both the Buyer and Seller

**8t. 373** The undersigned agree to purchase the Premises on the terms and conditions herein stated and acknowledge receipt of a
374 copy hereof including the Buyer Attachment.

375 _____  05-22-09
BUYER'S SIGNATURE        MO/DA/YR        BUYER'S SIGNATURE        MO/DA/YR

376 _____
ADDRESS        ADDRESS

377 _____
CITY STATE ZIPCODE        CITY, STATE, ZIPCODE

# 9. SELLER ACCEPTANCE

**9a. 378** Broker on behalf of Seller:

379 _____
PRINT SALESPERSON'S NAME        AGENT CODE        PRINT FIRM NAME        FIRM CODE

380 _____
FIRM ADDRESS

381 _____
TELEPHONE        FAX        STATE        ZIP CODE
EMAIL

**9b. 382** Agency Confirmation: The Broker named in Section 9a above is the agent of (check one):
383. ☐ the Seller, or ☐ both the Buyer and Seller

**9c. 384** The undersigned agree to sell the Premises on the terms and conditions herein stated, acknowledge receipt of a
385 copy hereof and grant permission to Broker named in Section 9a to deliver a copy to Buyer.

386 ☐ Counter Offer is attached, and is incorporated herein by reference. Seller should sign both this offer and the Counter Offer
387 If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling

388 _____  5-22-09  _____  5-22-09
SELLER'S SIGNATURE        MO/DA/YR        SELLER'S SIGNATURE        MO/DA/YR

389 _____
SELLER'S NAME PRINTED        SELLER'S NAME PRINTED

390 1240 N. 76th Street
ADDRESS        ADDRESS

391 Scottsdale, AZ, 85260
CITY, STATE, ZIPCODE        CITY, STATE, ZIPCODE

392 ☐ OFFER REJECTED BY SELLER: _____
MONTH        DAY        YEAR        (SELLER'S INITIALS)

For Broker Use Only:

Brokerage File/Log No. _____  Manager's Initials _____  Broker's Initials _____  Date _____
MO/DA/YR

This form is available for use by the entire real estate industry. The use of this form is not intended to identify the user as a REALTOR® REALTOR® is a registered collective membership mark that may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics
©Arizona Association of REALTORS® 2005 • This form is available through your local association of REALTORS® • Form RPC 5/05

Initials: _____  _____        Initials: _____  _____
SELLER  SELLER        BUYER  BUYER

©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05

Page 9 of 9

# ADDENDUM TO RESIDENTIAL RESALE REAL ESTATE PURCHASE CONTRACT

This Addendum to Residential Resale Real Estate Purchase Contract ("**Addendum**") is entered into this 1st day of April, 2009 (the "**Agreement Date**"), by and between Kurt Tompkins ("**Buyer**") and Thomas R. Loomis and Laura S. Kimbrough, husband and wife ("**Sellers**"). In consideration of the terms, conditions and covenants contained in this Addendum and for other valuable considerations, the receipt and sufficiency of which are hereby acknowledged, Buyer and Sellers agree to amend that certain Residential Resale Real Estate Purchase Contract, dated contemporaneously with this Addendum, executed by and between Buyer and Sellers (the "**Contract**"), as set forth in this Addendum.

1. **Definitions, Incorporation and Controlling Agreement.** As used in this Addendum, unless otherwise defined, capitalized terms shall have the meanings set forth in the Contract. The terms of the Contract are incorporated by reference, where necessary for the consistency of the Contract and this Addendum. As used in this Addendum, the defined term, the "Home Loans" shall mean and refer to those two loans that are secured by encumbrances recorded against the Property and are described on the **Exhibits A-1 and A-2** attached to this Addendum. In the event of any conflict in the terms of this Addendum and the terms of the Contract, the terms of this Addendum shall control.

2. **Payment Terms.** The Purchase Price is $1,350,000. The Purchase Price shall be paid at the COE by the payment by Buyer to Sellers of immediately available funds in the amount of $150,000 and the payoff through refinancing or by Buyer's assumption of the Loans. The $150,000 paid by Buyer shall be disbursed at the COE by Escrow Agent to Executive Pawn, LLC in payment of the amounts due under the loan, financing and extension of credit made by Executive Pawn, LLC to Sellers, as evidenced by a promissory noted in the stated principal amount of $150,000, executed by Sellers as the Maker to Executive Pawn, LLC as the Payee (the "**Executive Pawn Loan**"). The payment in full by Sellers of the Executive Pawn Loan shall be a condition to the COE. Upon the payment in full of the Executive Pawn Loan, the encumbrance recorded against the Property as security for the repayment of the Executive Pawn Loan shall be released.

3. **Pre-Closing Possession.** Notwithstanding any of the terms or provisions of the Contract, Sellers grant Buyer the right to the full and exclusive possession of the Property immediately upon the execution by Buyer and Sellers of the Contract and this Addendum, which right of possession shall remain in effect until the COE or the termination or cancellation of the Contract, which ever occurs earlier. Upon taking possession of the Property and continuing until the COE or the termination or cancellation of the Contract, whichever occurs earlier, in consideration by Sellers of the grant of the right of early possession to Buyer, Buyer shall pay the amounts that come due from the date of the taking of possession under the Loans and real property taxes assessed against the Property. In addition, Buyer shall be responsible for placing and paying the cost of the appropriate comprehensive casualty and liability insurance for the Property.

4. **The Home Loans**. Sellers shall provide to Buyer contemporaneously with the execution by Buyer and Sellers of the Contract and this Addendum: copies of all documents, instruments, notices and communications that relate to the Home Loans; and full and complete access (including user names and passwords) to the online accounts for the Home Loans. Buyer and Sellers shall take such actions as are necessary or appropriate to cause the lenders under the Home Loans to approve an assumption of the Home Loans by Buyer (the "**Home Loans Assumption Approval**". The COE shall occur as soon as reasonably possible after the Home Loans Assumption Approval has been obtained. Pending the Home Loans Assumption Approval, Buyer shall have the exclusive authority to take or to direct Sellers to take such actions as are required to select or chose any options for payments, conversions or modifications under the Home Loans. Sellers appoint Buyer as Sellers' attorney-in-fact with respect to the taking of such actions with respect to the Home Loans. The payments to be made by Buyer with respect to the Home Loans as provided in Section 3 of this Addendum shall be remitted in the manner selected by Buyer. Sellers shall deliver promptly to Buyer all notices, statements or communication received by Sellers with respect to the Home Loans. Sellers and Buyer acknowledge the extreme risks associated with the occurrence of an event of default that may give rise to an acceleration of the amounts due under the Home Loans and a foreclosure due to the execution of the Contract and this Addendum and the actions taken by Buyer and Sellers under the Contract and this Addendum.

5. **Executive Pawn Loan**. Sellers acknowledge the Executive Pawn Loan shall become all due and payable at the COE or upon the termination or cancellation of the Contract, whichever occurs earlier. Sellers acknowledge further that the Executive Pawn Loan is to be secured by an encumbrance to be recorded against the Property.

6. **Memorandum of Agreement**. A Memorandum of Agreement in the form of **Exhibit B** attached to this Addendum shall be executed by Buyer and Sellers and recorded against the Property in the Official Records of Maricopa County, Arizona as soon as reasonably possible after the execution of the Contract and this Addendum.

7. **Execution of Warranty Deed**. Sellers shall execute a warranty deed in the standard form of Escrow Agent for the transfer of the title to the Property to Buyer, and deposit the same in the Escrow with Escrow Agent to be held for recording in the Official Records of Maricopa County, Arizona at the COE.

8. **COE Date**. The COE shall occur as soon as reasonably possible after the Home Loans Assumption Approval has been obtained or Buyer has obtained a firm and irrevocable commitment for financing that will allow for the payoff of the Home Loans in full, whichever date is earlier.

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the date(s) set forth below their respective signatures.

**SELLERS:**

Thomas R. Loomis

Laura S. Kimbrough

Date of Execution: May 22, 2009

**BUYER:**

Kurt Tompkins

Date of Execution: May 22, 2009

**List of Exhibits**

Exhibits A-1 and A-2: Copies of the Most Recent Statements Regarding the Home Loans
Exhibit B:           Memorandum of Agreement



**EXHIBIT C**

This information was recorded at request of:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004
The recording official is directed to return
This information or a copy to above person



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20100320807 04/16/2010 01:28
ELECTRONIC RECORDING

1274353-2-3-3--
Yorkm

Space Reserved For Recording Information

## NOTICE OF TRUSTEE'S SALE UNDER DEED OF TRUST

Trust No. 1274353-11
Loan No. XXXXXX7029

Ref. LAURA S KIMBROUGH
UNVER

Date: April 15, 2010

County where Real Property is Located MARICOPA, Arizona

ORIGINAL TRUSTOR
THOMAS R LOOMIS AND LAURA S KIMBROUGH
7240 E SWEET WATER AVENUE
SCOTTSDALE, AZ 85260

CURRENT TRUSTEE
CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

1(800)546-1531

CURRENT BENEFICIARY
CAPITAL ONE, N.A.

C/O CAPITAL ONE, NA
6151 CHEVY CHASE DRIVE
LAUREL MD 20707

ORIGINAL PRINCIPAL BALANCE AS SHOWN ON DEED OF TRUST: $887,000.00

DEED OF TRUST RECORDING INFORMATION RECORDING NUMBER: 20050484559**
DOCKET: XX
PAGE: XX
DATE: April 15, 2005
COUNTY ASSESSOR'S TAX PARCEL NUMBER: 175-04-042



**EXHIBIT D**

COPY

Michael D. Curran, No. 012677
**MAYNARD CRONIN ERICKSON**
**CURRAN & SPARKS, P.L.C.**
3200 North Central Avenue
Suite 1800
Phoenix, Arizona 85012
Telephone: (602) 279-8500
E-Mail: mcurran@mmcec.com

Attorneys for Plaintiff

MAY 0 6 2010



MICHAEL K. JEANES, CLERK
A. ASHER
DEPUTY CLERK

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

KURT TOMPKINS, an individual,

               Plaintiff,

vs.

THOMAS R. LOOMIS and LAURA
S. LOOMIS, husband and wife,

               Defendants.

No. CV2010-014803

**COMPLAINT**

(Breach of Contract - Promissory Note)

For his complaint against Defendants Thomas R. Loomis and Laura S. Loomis ("Defendants"), Plaintiff Kurt Tompkins ("Plaintiff") alleges as follows:

1.     Plaintiff is a resident of Maricopa County, Arizona.

2.     Defendants are residents of Maricopa County, Arizona.

3.     The Promissory Note giving rise to this action was executed in, and to be performed in, Maricopa County, Arizona.

4.     Venue is appropriate in Maricopa County Superior Court.

5.     This Court has jurisdiction over the Defendants named herein and the subject matter hereof.

6.     In the event of a default judgment, Plaintiff shall be entitled to reasonable attorneys' fees pursuant to Arizona law and paragraph 5 of the subject contract.

MAYNARD CRONIN ERICKSON CURRAN & SPARKS, P.L.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE • SUITE 1800 • PHOENIX, ARIZONA 85012
TELEPHONE 602.279 8500 • FACSIMILE 602.263 8185

7.   In the event Defendants contest this action and Plaintiff is the successful party, Plaintiff should be awarded his reasonable attorneys' fees pursuant to A.R.S. § 12-341.01 and paragraph 5 of the subject contract.

8.   In the event Plaintiff is successful in this action, Plaintiff shall be entitled to his taxable costs pursuant to A.R.S. § 12-341.

## COUNT ONE

### (Breach of Contract)

9.   On or about April 1, 2009, Defendants executed a promissory note in favor of Plaintiff in the amount of $150,000.00 (the "Promissory Note").

10.   The Promissory Note provides that the "entire unpaid principal, together with accruing and unpaid interest shall be due in full upon the termination or cancellation of the Residential Resale Real Estate Purchase Contract dated April 1, 2009, executed by and between Kurt Tompkins as the Buyer and Maker as the Sellers ... , or upon the closing of the sale of the Property that is encumbered by the Deed of Trust pursuant to the Contract, whichever date is earlier ... ."

11.   The Promissory Note provides that the Defendants shall be in default under the Promissory Note if they should "fail to pay any installment of Principal or interest accrued on the Principal on or before the Maturity Date."

12.   Defendants are in default under the Promissory Note because the "Residential Resale Real Estate Purchase Contract dated April 1, 2009 " has been terminated or canceled as a result of Defendants' request for such termination or cancellation directed to the Plaintiff and the title company.

13.   Further, Defendants, through their counsel, have declared a breach, and therefore a termination, of the Residential Resale Real Estate Purchase Contract dated April 1, 2009.

14.   The Promissory Note provides, further, that Plaintiff need not give any further notice in the event of a default and may exercise his rights under Arizona law to seek payment

of all unpaid principal and interest.

15.    The Promissory Note provides for interest, and Plaintiff is entitled to such interest.

16.    As a result of Defendants' breach of the Promissory Note and their resulting default, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays for damages against Defendants as follows:

A.    For compensatory damages in the amount of $150,000.00;

B.    For pre-judgment and post-judgment interest as allowed by Arizona law and the terms of the Promissory Note;

C.    For Plaintiff's reasonable attorneys' fees pursuant to A.R.S. § 12-341.01 and the terms of the Promissory Note;

D.    For Plaintiff's taxable costs pursuant to A.R.S. § 12-341 and such additional collection costs pursuant to the terms of the Promissory Note; and

E.    For such other and further relief as the Court deems just in the premises.

RESPECTFULLY SUBMITTED this 6th day of May, 2010.

MAYNARD CRONIN ERICKSON
CURRAN & SPARKS, P.L.C.

By: _____
Michael D. Curran
3200 N. Central Avenue
Suite 1800
Phoenix, Arizona 85012
Attorneys for Plaintiff

**EXHIBIT E**

Kevin C. Barrett; Graif Barrett & Matura
(Attorney's Name)
1850 N. Central Ave , Suite 500

Phoenix, AZ. 85004
(Attorney's Address)
020104
(Attorney's Bar Number)

## Maricopa County Justice Courts, State of Arizona

McDowell Mountain Justice Court   18380 N. 40th St., #130, Phoenix, AZ 85032   602-372-7000

CASE NUMBER: CC20/0235038

| | |
|---|---|
| Thomas R. Loomis & Laura Kimbrough Loomis | Kurt Tompkins |
| C/O Kevin C. Barrett, Graif Barrett & Matura, P.C. | 7240 East Sweetwater Ave. |
| 1850 N. Central, Suite 500, Phoenix, AZ. 85004 | Scottsdale, AZ. 85260 |
| 602-792-5700 | |
| **Plaintiff(s)**   Name/Address/Phone | **Defendant(s)**   Name/Address/Phone |

## COMPLAINT - EVICTION ACTION    ☒ Residential ☐ Mobile Home ☐ Commercial

### YOUR LANDLORD IS SUING TO HAVE YOU EVICTED, PLEASE READ CAREFULLY

1. This court has jurisdiction to hear this case. The property is within this court's judicial precinct and is located at:   7240 East Sweetwater Ave., Scottsdale, AZ. 85260

2. The Defendant wrongfully withholds possession of this property.

3. Any required written notice was served on the Defendant on  April 27, 2010 _____ and was served in the following manner:   First Class Mail
A copy of this notice is attached to this complaint.

4. The Plaintiff is authorized to file this action and has done so for the following reason(s):

☐   RENT: The Defendant has failed to pay rent as agreed. The rent is unpaid since _____ and had a prior unpaid balance of $_____

The rental agreement requires rent to be paid each month on the ___ day of each month in the following amount: $ _____

The lease provides for late fees and that the late fees be calculated in the following manner: _____

Notice: If you are a residential tenant and the only allegation from your landlord is that you have not paid your rent, you may contact your landlord or your landlord's attorney and offer to pay all of the rent due, plus any reasonable late fees, court costs and attorney's fees. If you pay these amounts prior to a judgment being entered, then this case will be dismissed and your lease will be reinstated and will continue.

EA 8150-212.01 R:01-20-2009

☐ NON-COMPLIANCE: The Defendant committed. and has failed to remedy, a condition that is a material non-compliance of the rental agreement. Specifically, after receiving a notice to remedy the problem, the Defendant, on the ___ day of _____ 20___ caused or allowed the following condition to occur: _____

☒ IRREPARABLE BREACH: The Defendant has committed a material and irreparable breach. Specifically, on the ___ day of November 20, the Defendant did the following: Breach of Real Estate Sales Contract

☒ OTHER: Breach of Sales Contract. Escrow has been cancelled.

5. The Defendant owes a rental concession in the following amount: $ _____ The nature of the rental concession (if any) is: _____

6. As of the date that this action is being filed, the Defendant owes the following:

| | |
|---|---|
| Rent (From Current and Prior Months) Totaling: | $ _____ |
| Late Fees: | $ _____ |
| Rental Concessions: | $ _____ |
| Costs: | $ 300.00 |
| Attorney's Fees: | $ 1,500.00 |
| Other Damages: | $ _____ |
| Total Amount Requested: | $ 1,800.00 |

7. The Plaintiff requests a money Judgment for the amounts described above and also a Judgment for possession of the property.

8. WRIT OF RESTITUTION: The Plaintiff requests the court issue a Writ of Restitution, returning the property to the Plaintiffs possession:

☒ 5 days from the date of the judgment or      ☐ 12 to 24 hours from the time of the judgment. (Applies to material and irreparable breach only)

9. By signing this complaint, I verify that the assertions are true and correct to the best of my knowledge and belief and that they are based on a reasonably diligent inquiry.

_____
Plaintiff

1850 North Central Avenue
Suite 500
Phoenix, Arizona 85004

Phone: (602) 792-5715
Fax: (602) 792-5710

Kevin C. Barrett
kbarrett@gbmlawpc.com
Admitted in Arizona
California
Nevada

April 27, 2010

Kurt Tompkins
7240 E. Sweetwater Ave.
Scottsdale, AZ 85260

Re:     7240 East Sweetwater Avenue
        Scottsdale, Arizona 85260
        Escrow No.: 09100150-010-LR

Dear Mr. Tompkins:

I have been retained to represent Tom and Laura Loomis regarding the failed sale of this property. Tom and Laura have been notified by their lenders that their property is subject to foreclosure because the mortgage payments have not been made for some time. Pursuant to Nos. 3 and 4 of the Addendum to Residential Resale Real Estate Purchase Contract, you were obligated to pay the mortgages pending completion of the sale. Your failure to do so constitutes a material breach of the purchase contract.

This breach is not subject to any cure period in the contract because the damage to Tom and Laura's credit cannot be cured by bringing the mortgages current.

This breach does not involve an unfulfilled loan contingency. As such, Tom and Laura are electing to keep the $150,000 paid as Earnest Money as their sole remedy for your breach of the purchase contract.

By copy of this letter, I am instructing Ms. Russell to cancel the escrow.

Finally, Tom and Laura have agreed to give you until May 3, 2010 to vacate the property. If you have not vacated the property by that date, they will file an action in Maricopa County Superior Court to evict you from their property.

If you have any questions, please feel free to contact me.

Sincerely,

Kevin C. Barrett

KCB/jhm

cc:     Tom and Laura Loomis
        Lynne Russell